# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

CURTIS ELLIS,

                Plaintiff,

    v.                                            Case No. 08-CV-1021

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____

## ORDER

Plaintiff Curtis Ellis ("Ellis") filed this action for judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits. Ellis alleges disability beginning on April 1, 1996, and arising from chronic low back pain, bilateral leg pain and numbness, chronic neck and back pain, depression, and sleep apnea. For the reasons set forth below, the court finds that the decision of the Commissioner is supported by substantial evidence and will affirm the decision.

## BACKGROUND

Ellis filed the current application for DIB and SSI on May 6, 2005. This is the most recent in a series of benefit applications, with the earliest being filed in 1992. (Tr. 12-14). The agency denied Ellis's current application initially and upon reconsideration, and Ellis then requested a hearing. (Tr. 53-32). A hearing was held before an Administrative Law Judge (ALJ) on May 27, 2008, at which Ellis was represented by counsel. (Tr. 543). The ALJ issued a written decision on June 19,

2008, concluding that Ellis was not disabled under step five of the sequential evaluation process because a significant number of jobs exist that Ellis could perform. (Tr. 20). The Appeals Council denied review of the decision and Ellis filed suit in this court on November 26, 2008. (Tr. 4).

_____**a.    Hearing Testimony**

At Ellis's hearing before the ALJ, testimony was provided by Ellis and by a Vocational Expert. Ellis testified at the time that he was 39 years old and had not worked since 1996, approximately 12 years prior to the hearing. (Tr. 546). He completed the 11th grade and was last employed doing janitorial work. (Tr. 16). Ellis lives with his mother and helps with household chores, but reports that the cooking and shopping is primarily done by his mother and fiancé. (Tr. 557-58).

Ellis experiences lower back pain, as well as shoulder and neck pain and testified that he spends approximately three hours a day lying down and can sit for only 30 minutes, walk for two blocks and stand for about 15 minutes. (Tr. 540-51, 558). Surgery was recommended as a remedy for his back issues, but Ellis refused to pursue a surgical intervention because he feared paralysis or a worsening of his condition. (Tr. 550-51, 560). Ellis obtains some relief by taking prescribed medications, by receiving epidural injections, by using a heating pad, and by lying down. (Tr. 549-50, 553). He takes the prescription medications Vicodin, Topamax, Amitriptyline, and Cyclobenzaprine, which reduce his pain level to a 5 on a 10 point scale, but also result in drowsiness. (Tr. 550, 552). Ellis has also received treatment

Case 2:08-cv-01021-JPS   Filed 02/23/10   Page 2 of 22   Document 21

for his sleep apnea and for depression.  He was diagnosed with severe sleep apnea in May 2004 and uses a CPAP[1] machine at night. (Tr. 556).  Ellis also reported that he had been visiting a psychiatrist approximately every three months and was taking the prescription depression drug Effexor. (Tr. 554).

A Vocational Expert (VE) also appeared at the hearing and testified about Ellis's past employment and about the number of jobs available in the state for people with his particular limitations.  The VE noted that Ellis's past employment is considered light, unskilled work pursuant to the Dictionary of Occupational Titles. (Tr. 563).  The VE testified that a hypothetical worker with Ellis's age, education and past work who is able to perform sedentary work without twisting, bending, hazards, driving, public contact, overhead lifting, or frequent contact with supervisors and co-workers and who needed to change position every thirty minutes could not perform Ellis's past work. (Tr. 564).  The VE did identify other sedentary, unskilled jobs that exist in Wisconsin which a worker with the aforementioned limitations could perform. (Tr. 564).  The VE noted, however, that the identified jobs could not accommodate a worker who needs to lie down at will or needs to be absent more than two days per month. (Tr. 566).

---

[1]A Continuous Positive Airway Pressure (CPAP)  machine  is a medical device used to treat sleep apnea by pushing air from a tube into a patient's air passageway via a mask or device worn over the patient's mouth and nose. *See* American Sleep Apnea Association Website:
http://www.sleepapnea.org/resources/pubs/cpap.htm
(last visited February 11, 2009).

### b. Medical Evidence of Record

Ellis's medical record includes forms and treatment notes generated by general physicians Dr. Wetzler and Dr. Tamayo, pain specialist Dr. Bahal, sleep specialist Dr. Arshad, and psychiatrists Dr. Thompson and Dr. Moffic. Ellis's records were also reviewed for analysis by state agency psychologist Dr. Matkom, American Board of Disability Analysts analyst Dr. Ehrmann, and state agency psychologist Mr. Edelman. In October 2001, Dr. Wetzler filled out a Medical Assessment Form for Ellis regarding his back and noted, via checkmarked boxes, limitations on Ellis's ability to sit and stand/walk and his need to take unscheduled breaks during the work day and gave a prognosis of "guarded - depends on treatment." (Tr. 111). Several years later, in early 2004, Dr. Wetzler completed another Medical Assessment Form noting moderate low back pain and limitations in lumbar motion, a need for frequent breaks, and restrictions limiting Ellis to two hours of sitting or standing/walking in a work day. (Tr. 124).

Around that same time, Ellis began seeing Dr. Bahal for treatment of his back pain. Dr. Bahal initially noted that Ellis was obese, "poorly motivated," did not follow through on treatment recommendations, and was "not permanently disabled." (Tr. 137). Ellis asked Dr. Bahal to recommend permanent social security disability, but Dr. Bahal refused, stating: "the patient needs his own motivation to be able to get better and to be in some kind of work force eventually due to his young age." (Id.). An MRI did reveal that Ellis had a small posterolateral disc protrusion and

-4-

degenerative joint disease of the lumbar spine. (Tr. 140). Dr. Bahal referred Ellis for epidural steroid injections for his back pain and Ellis received three injections between December 2003 and February 2004. (Tr. 141). Ellis reported to Dr. Bahal that the injections only resulted in a slight improvement and continued to insist that he was disabled and presented Dr. Bahal with social security disability paperwork. (Tr. 137).

Ellis continued to visit Dr. Bahal throughout 2004. Dr. Bahal's later treatment notes record moderate and mild alterations in Ellis's lower back, including a small focal left posterolateral disk protrusion at L4-L5 disk and a small left paramedian posterior L5-§ disk protrusion, effacement of L-L5 nerve root ganglion and § nerve root sleeve, and mild L3-4, L4-L5, and L5-§ facet arthropathy. (Tr. 126). Dr. Bahal met with Ellis for the last time in November 2004 and recommended surgery for his back, which Ellis refused. (Tr. 130). Because he could do nothing further to change Ellis's back condition other than recommend surgery, which Ellis would not pursue, Dr. Bahal stated briefly that "therefore, it is my recommendation that he be approved for social security disability benefits." (Id.).

While seeing Dr. Bahal, Ellis also began seeing sleep specialist Dr. Arshad for his sleep apnea and general physician Dr. Tamayo regarding his back. Dr. Arshad diagnosed Ellis with sleep apnea in April 2004 and prescribed use of a CPAP mask. (Tr. 199-201). Ellis continued to see Dr. Arshad through January 2008, but his treatment notes do not report any further problems. (Tr. 361-68). Ellis also

Case 2:08-cv-01021-JPS   Filed 02/23/10   Page 5 of 22   Document 21

visited Dr. Tamayo for the first time in April 2004. Over the course of his treatment, Ellis reported lower back pain. (Tr. 245, 251-52, 258, 273, 275). In May 2004, Dr. Tamayo completed a Medical Assessment Form for Ellis diagnosing lumbar radiculopathy and herniated discs and giving a prognosis of "fair." (Tr. 144). The form noted in checkmarked boxes that Ellis had significant limitations on his ability to sit and stand/walk and stated that Ellis would need frequent unscheduled breaks during a work day and that his condition would result in more than four absences from work each month. (Tr. 146).

In July 2005, a state agency physician completed a residual functional capacity (RFC) assessment of Ellis finding that he could occasionally lift twenty pounds, frequently lift ten pounds, and sit, stand, and walk for six hours in a work day. (Tr. 158-62). A second state agency physician reviewed Ellis's medical records in April 2006 and confirmed the initial RFC assessment. (Tr. 165).

In February 2008, Dr. Ehrmann completed an additional Medical Assessment Form on Ellis's behalf. The form diagnosed radiculopathy and disk herniation and gave a prognosis of "poor." (Tr. 356). Dr. Ehrmann indicated in checkmarked boxes that Ellis could only sit or stand/walk for less than two hours per day, needed seven unscheduled breaks in a given work day and more than four absences from work per month, and could never lift more than twenty pounds or twist or stoop. (Tr. 358).

Ellis also received treatment from two mental health providers beginning in 2005. He initially visited Dr. Thompson and was diagnosed with depression, given

Case 2:08-cv-01021-JPS   Filed 02/23/10   Page 6 of 22   Document 21

a Global Assessment of Functioning (GAF)[2] score of 30, and prescribed Effexor and Provigil. (Tr. 334). Treatment notes from Ellis's later visits state that he was "feeling better" and his depression was "in remission" and that Ellis wanted to discuss sexual performance concerns. (Tr. 324, 326, 328, 332, 333). Dr. Thompson continued to see Ellis through June 2006 and upgraded his GAF score to 45-55. (Tr. 323-24).

A state agency psychologist completed a psychiatric review technique in July 2005 and found Ellis to have only mild restrictions in daily living activities, moderate difficulties in social functioning, and completed a mental RFC assessment finding that Ellis was not significantly limited in most categories. (Tr. 166-67, 180). A second state agency psychologist reviewed Ellis's medical record and affirmed this RFC assessment in April 2006. (Tr. 168).

Ellis was referred to a second psychiatrist, Dr. Moffic, in September 2006. Dr. Moffic initially noted that Ellis's depression was "controlled well" but later reported a limited period of increased anxiety due to financial stress and alcohol. (Tr. 319, 322). Dr. Moffic completed a Mental Impairment Medical Assessment Form for Ellis in January 2007, indicating a GAF score of 50 and a year high of 55. (Tr. 305). The form also noted moderate restrictions in daily living activities and social functioning and stated that Ellis's impairments would result in four absences a month from work. (Tr. 306-07).

---

[2]The Global Assessment of Functioning scale reports a clinician's assessment of an individual's overall level of functioning. *Craft v. Astrue*, 539 F.3d 668, 676 n.7 (7th Cir. 2008). GAF scores run from 0 to 100 and indicate an increasing ability to function as the numbers get larger. *Ann G. Hirschman, Medical Proof of Social Security Disability* 12-6 (2nd ed. 2008).

**ANALYSIS**

The Social Security Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the court will uphold an ALJ's decision if it is supported by substantial evidence. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). An ALJ's decision is supported by substantial evidence if the ALJ identifies supporting evidence in the record and adequately discusses the issues. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). Evidence is substantial if it is sufficient for a reasonable person to accept as adequate to support the decision. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). To determine if substantial evidence supports the ALJ's decision, the court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's by reconsidering facts, re-weighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Id.* Where, as here, the ALJ denies benefits, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Further, the ALJ must articulate his or her assessment of the evidence so that the court may trace the ALJ's reasoning. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

Ellis argues that the ALJ's decision is not supported by substantial evidence because the ALJ committed a series of errors in concluding that Ellis had not been under a disability from April 1, 1996, through the date of the decision. Ellis first

-8-

argues that remand is necessary because previous ALJ decisions and hearing records regarding his prior benefits applications were not included in the current hearing record. Next, Ellis argues that the ALJ made an improper credibility determination and improperly weighted the opinions of his treating professionals. Finally, Ellis argues that the ALJ made incorrect determinations at steps three and five of the five-step sequential test for evaluating whether a claimant is disabled.

## I.      Completeness of the Record Before the ALJ

Ellis argues that the ALJ's determination implicates his due process rights because Ellis's prior hearing records and decisions were not included in the record compiled for the instant case. In his decision, the ALJ relied upon the preclusive effect of earlier decisions on Ellis's previous applications, stating:

> Res judicata would preclude a finding that [sic] disability any earlier than August 13, 2003 and as such focus will be on treatment records since then. For those treatment records between 1996 and 2003, reference should be made to the three earlier decisions of September 24, 1998, August 12, 2003, and April 20, 2005, all of which are hereby incorporated by reference.

(Tr. 16). Ellis argues that the court cannot determine if res judicata was properly applied to preclude disability prior to August 2003 because the record does not include decisions and related records from previous hearings. In response, the defendant argues that failure to include these prior records is harmless because Ellis is not eligible for benefits retroactive to his alleged disability onset date. This is because a claimant is only eligible for DIB benefits for one year prior to the filing of his application and SSI benefits beginning the month after the filing of his

-9-

application. Further, Ellis has not asserted any basis for reopening his prior applications.

The court will not remand the case to supplement the record with previous ALJ decisions and medical evidence considered at those hearings because the documents do effect Ellis's eligibility for benefits under his current application and because Ellis does not seek to reopen his prior benefit applications. First, the ALJ's application of res judicata to disability with an onset date prior to August 13, 2003, has no practical impact on Ellis's ability to obtain benefits. This is because Ellis is only entitled to benefits predating his application for DIB benefits by twelve months. See 20 C.F.R. § 404.621(a)(1) ("If you file an application for disability benefits...after the first month you could have been entitled to them, you may receive benefits for up to 12 months immediately before the month in which your application is filed"); *White v. Sullivan*, 965 F.2d 133, 135 n.1 (7th Cir. 1992). Ellis filed his current application for benefits on May 6, 2005. Therefore, any disability benefits awarded to Ellis pursuant to this application would begin no earlier than May 6, 2004.

Ellis's ability to receive SSI benefits is even more restricted. He cannot receive any SSI benefits until June 6, 2005, because a claimant cannot begin receiving SSI benefits until the month after his application is filed. 20 C.F.R. § 416.335 ("the earliest month for which we can pay you benefits is the month following the month you filed the application"). Therefore, Ellis's inability to

challenge the ALJ's res judicata determination regarding disability prior to August 13, 2003, is irrelevant because he cannot receive retroactive benefits for that period.

Second, the record evidence regarding Ellis's prior applications is not pertinent to his current application for benefits because he does not challenge prior ALJ decisions or seek to reopen prior benefit applications. The medical evidence and hearing testimony gathered for Ellis's prior applications were already considered and found to be insufficient to establish disability. Ellis did not appeal these unfavorable decisions and he cannot now ask for a different decision based on the same evidence. A remand of the case for the sole purpose of adding to the record previously-considered evidence insufficient to establish disability would be a futile exercise that the court declines to undertake.

## II.    Credibility Determination and Consideration of Medical Opinions

Ellis next argues that the ALJ's decision is not supported by substantial evidence because the ALJ made an improper credibility determination and failed to properly weigh the medical opinions in the record. Ellis fights an uphill battle in challenging the ALJ's credibility determination because such determinations are entitled to special deference and will not be disturbed unless "patently wrong." *Diaz v Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Indeed, a court's review of an ALJ's credibility determination is highly limited because the court "lacks direct access to the witnesses, lacks the trier's immersion in the case as a whole, and when reviewing decisions by specialized tribunals also lacks the trier's experience with the

-11-

type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

When an ALJ evaluates the credibility of testimony and complaints, there are several

factors to consider, including: the absence of an objective medical basis supporting

the degree of severity of subjective complaints alleged; the claimant's daily activity;

the duration, frequency, and intensity of pain; the precipitating and aggravating

factors; dosage, effectiveness, and side effects of medication; and, functional

restrictions. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see also* SSR 96-

7p. After evaluation of these factors, an ALJ may find a claimant's symptoms not

credible even where there is a medically determinable impairment that could

reasonably be expected to produce the symptoms the complainant alleges. *See*

*Scheck*, 357 F.3d at 701-03 (7th Cir. 2004).

The court finds that the ALJ properly considered the factors relevant to

credibility and that his evaluation of credibility is not patently wrong. The ALJ

concluded that Ellis's reports of his symptoms and functional limitations were

"nowhere near as severe or limiting as claimant has alleged" and that examination

results "do not suggest the extreme degree of pain and limitation which claimant

alleges." (Tr. 17, 19). In reaching these conclusions, the ALJ noted that medical

notes contradicted Ellis's claims of debilitating back pain and psychological

problems. The ALJ discounted Ellis's claims of incapacitating back pain because

they were inconsistent with the fact that he had primarily seen general physicians

regarding his complaints, that his diagnosis was upgraded to a simple lumbar disc

-12-

degeneration, that he had not been referred to an orthopedic or back specialist since 2004, that he had declined the suggested remedy of surgery,[3] and that he had not had any inpatient treatment or hospitalization. (Tr. 16-18). The ALJ also found that Ellis's claims of constant pain were inconsistent with treatment notes reporting that medication provided 60% to 70% relief from pain. (Tr. 17). The ALJ also noted that Ellis's psychiatric treatment records generally reported his depression as "in remission" or "controlled" after 2005. (Tr. 17). The agency is entitled to considerable deference on its credibility determination and the court finds no reason to reverse the ALJ's conclusions regarding the severity of Ellis's reported symptoms.

Ellis also argues that the ALJ erred by ignoring or discounting evidence favorable to him and selectively citing to evidence supporting a determination of "not disabled." Specifically, Ellis notes that Dr. Wetzler opined that he was unable to work because of back pain and would need to miss more than four days of work per month and that Dr. Bahal recommended Ellis be approved for disability benefits. Ellis points out that various physicians attempted to manage his back pain by prescribing a slew of medications, including hydrocodone, vicoprofen, Topamax, Amitriptyline and Famotidine. Ellis further asserts that the ALJ did not properly account for his extreme drowsiness resulting from sleep apnea and prescribed medications.

---

[3]Ellis argues that the ALJ improperly cited his refusal to have surgery because Ellis had a legitimate concern that surgery had a 50/50 chance of resulting in paralysis or a worsening of his condition. (Tr. 560). However, there is no evidence in the medical records suggesting that surgery presented such a serious risk.

-13-

The court finds that the ALJ properly considered Ellis's medical history and treatment notes in reaching his disability determination. Ellis's pain specialist, Dr. Bahal, initially refused to label Ellis as disabled and noted that he was "poorly motivated." Approximately one year later, Dr. Bahal acceded to Ellis's requests and recommended Ellis for disability benefits, noting that Ellis was "unlikely to improve, and therefore, it is my recommendation that he be approved for social security disability benefits." (Tr. 130). Ellis alleges that the ALJ erred by not accepting this later recommendation that he be approved for benefits. The recommendation is not determinative, however, because the finding that a claimant is "disabled" is one reserved to the Commissioner of Social Security. A claimant is not entitled to benefits simply because his treating physician opines that he is disabled and entitled to benefits. *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). Further, Dr. Bahal made his recommendation for benefit approval only after noting that Ellis chose not to follow through on suggested treatment. Ellis declined the recommended surgery and Dr. Bahal could do nothing further but end treatment: "After a lengthy discussion, I did recommend that the patient see a spine surgeon, since he does have a herniated disc and this may be addressed in a surgical manner. The patient, however, does not want to see a spine surgeon, and he does not wish to have any type of surgery. At this time, I have nothing further to offer him..." (Tr. 130). It was only after determining that Ellis would not seek treatment to ameliorate his condition that Dr. Bahal made a cursory recommendation that Ellis be

approved for benefits. Thus, the court does not find the ALJ's decision erroneous because it did not accept Dr. Bahal's "recommendation" regarding a determination properly left to the agency.

Ellis also points to assessments completed by several of his medical treaters reflecting more serious restrictions on his ability to work than those found by the ALJ. The ALJ did not impermissibly ignore these lines of evidence but discounted them as inconsistent with treatment records and examination results. An ALJ must give controlling weight to the opinion of a treating physician only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). If the opinion is based solely on the patient's subjective complaints or is internally inconsistent, then the ALJ may discount it. *Id.*

Doctors Wetzler, Tamayo, and Ehrmann all checkmarked boxes on Ellis's Medical Assessment Forms indicating that Ellis would likely be absent from work more than four days per month due to his impairments. (Tr. 124-25, 147, 359). The ALJ addressed these limitations by noting that the physical examination results of the treaters were inconsistent with their conclusions of Ellis's low functional capacity. The ALJ explains that Dr. Tamayo's records indicating that Ellis received 60% to 70% relief from pain when medicated is inconsistent with Ellis's extreme pain complaints and Dr. Tamayo's estimates of Ellis's ability to sit, stand or walk for no more than two hours per work day. (Tr. 17). The ALJ also notes that physical

-15-

examination of Ellis showed only a mild reduction in range of motion and tenderness, which is subjective. Finally, the ALJ notes the treatment actions undertaken by the physicians are inconsistent with a conclusion that Ellis suffers severe back and shoulder impairments because Ellis has not been referred to an orthopedic or neurological specialist since 2004 and primarily received care from general physicians and sleep specialists. (Tr. 17). The extreme RFC estimates given by Ellis's general physicians were also inconsistent with the Wisconsin Disability Determination Service's conclusion that he had "light residual functional capacity." (Tr. 19). The ALJ did not outright reject the suggested limitations of Ellis's general physicians in the face of this determination, however, and instead gave Ellis "the benefit of the doubt to some extent with regard to his back complaints." (Id.). The ALJ considered the physician's responses and found Ellis to have sedentary residual functional capacity. (Id.).

The ALJ also considered Ellis's psychological impairments in rendering his decision. The ALJ noted that the extreme limitations suggested by Ellis's treating psychiatrists were inconsistent with their treatment notes repeatedly stating that his mental state was "improving" and that his depression was "controlled well" and "in remission." (Tr. 316, 318, 322, 324, 326, 328). These positive notes about the progress of Ellis's depression were recorded several months after completion of his Mental Impairment Medical Assessment form in January 2007. (Tr. 305). This improvement in Ellis's mental condition was similarly reflected in his GAF scores,

-16-

which improved from a 30 to a 50 over the course of his treatment at the Medical College of Wisconsin's Psychiatry Clinic. (Tr. 305, 315, 323). Finally, as the ALJ noted, the severe nature of Ellis's psychological challenges is undermined by the diminished frequency of his visits to the clinic throughout 2007 his "multiple no-shows in the latter part of the year and nothing further noted" in his records. (Tr. 18, 311-12, 315, 317). The ALJ explained that he gave little weight to extreme RFC estimates because they were inconsistent with other evidence and contemporaneous treatment notes regarding Ellis's physical and psychological complaints. Therefore, the court will not find his decision unsupported by substantial evidence based on his credibility determination or consideration of the medical evidence.

## III.    Step Three and Five Determinations

Ellis also argues that the ALJ's decision is not supported by substantial evidence because the ALJ made an improper medical listings evaluation under step three and an erroneous determination under step five of the sequential test for evaluating disability. The Social Security regulations create a five-step, sequential test for determining whether a claimant is disabled and thereby entitled to disability benefits. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Under this sequential test, an ALJ must address the following questions: 1) Is the claimant presently employed? 2) Is the claimant's impairment severe? 3) Do the impairments meet or exceed any of the specific impairments the Secretary

acknowledges to be conclusively disabling? 4) Have the claimant's impairments limited his remaining or residual functional capacity so that he is no longer able to perform the demands and duties of a former occupation? 5) Is the claimant unable to perform any other work in the national economy given his age, education and work experience? *Wolfe v. Shalala*, 997 F.2d 321, 322-23 (7th Cir. 1993).

Under step three of the sequential test, a claimant is presumptively eligible for benefits if he meets or exceeds one of the specific impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d)). A claimant may establish this presumptive disability by showing his impairment includes symptoms equal in severity to those described in the listing. *Id.* An ALJ must discuss a particular listing by name and offer "more than a perfunctory analysis" of the listing when determining whether a claimant's condition meets or equals a listed impairment. *Id.* Here, the ALJ found that Ellis "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 20).

Ellis points out that the ALJ did not specifically cite to listings 1.04 Disorders of the Spine, 12.04 Affective Disorders, or 3.10 Sleep-Related Breathing Disorders in making his step three finding. This is undoubtedly true. However, simple failure to expressly mention the applicable listings is insufficient to warrant reversal and remand of a case. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("As to

-18-

[claimant]'s argument that the ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here.").

Despite the fact that the ALJ did not specifically mention the listings, he did discuss the applicable evidence regarding the underlying impairments. The ALJ referred to Ellis's asserted back pain throughout his decision and also referenced a Mental Residual Functional Capacity Assessment regarding 12.04 Affective Disorders. (Tr. 18, 166). The ALJ noted that the mental assessment determined that Ellis was capable of light work and that he had only mild restrictions in nearly all listed categories. (Id.). The ALJ also cited to a Physical Residual Functional Capacity Assessment in the record that considered Ellis's "chronic pain." (Tr. 18, 158). The physical assessment states that Ellis has no established limitations in the majority of evaluated categories, including postural, manipulative, visual, communicative, and environmental limitations. (Tr. 160-162). The only exertional limitations noted are an ability to occasionally lift or carry no more than 20 pounds, a frequent ability to lift no more than 10 pounds, and an ability to sit and stand for about six hours of an eight hour work day. (Tr. 159). Thus, the ALJ considered Ellis's functional capacities regarding his depression and back pain though he did not cite to Listings 1.04, 12.04. In addition, the sleep disorder listing Ellis references does not relate specifically to sleep apnea, the severe impairment related to sleep that the ALJ determined Ellis to have. (Tr. 20). Instead, the listing states that sleep-

related disorders are to be evaluated under 3.09 Cor pulmonale secondary to chronic pulmonary vascular hypertension, or 12.02 Organic mental disorders. 20 C.F.R. § 404, Subpart P, Reg. 4, App. 1 § 3.10. Therefore, listing 3.10 does not appear to apply to Ellis's impairments.

Further, Ellis does not show that the ALJ made an incorrect step three determination because he fails to establish that his impairments meet or equal a listing. Ellis has the burden to show that his impairments meet the criteria specified in the listings he cites, but he makes no attempt to do so. *See Riboudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Ellis does not to cite to any evidence in the record showing that he meets the criteria for 1.04, 12.04, or 3.10, a prerequisite for establishing presumptive disability. Instead, he merely argues that the ALJ's analysis was insufficient because it was "perfunctory." The court will not deem the ALJ's step three determination that Ellis does not have an impairment that meets a 20 C.F.R. § 404 listing unsupported by substantial evidence when Ellis himself cannot point to evidence showing that his impairments meet the cited listings.

Ellis also criticizes the ALJ's step five determination as legally and factually erroneous. At step five of the sequential analysis for determining whether a claimant is disabled, the Commissioner must show that a significant number of jobs exist that the claimant can perform. *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004). A Vocational Expert testified at Ellis's hearing and the ALJ relied upon this testimony to determine that Ellis was not disabled under step five because a significant number

-20-

of jobs exist that he can perform. The ALJ made the determination based on VE testimony regarding unskilled sedentary work for a person with the following limitations: no twisting, no bending, no temperature/humidity extremes, no hazards, no driving, no public contact, and no bilateral overhead lifting, and with the additional specifications that contact with supervisors and co-workers would be occasional and that the work allow for a 30 minute sit/stand change of position. (Tr. 20, 563). The VE testified that a significant number of jobs exist that a person with these limitations could perform. She noted that the hypothetical claimant could work in packaging or assembly and that approximately 1,000 jobs exist in Wisconsin in each of these categories. (Tr. 564).

Ellis criticizes the ALJ's conclusion that he is not disabled under step five and claims that the ALJ relied upon a "faulty evaluation of the medical record." (Pl.'s Br., at 17). Specifically, he argues that the need to lie down at will and certain leg elevation requirements preclude the available employment referenced by the VE. However, these limitations precluding all packaging and assembly work only apply to Ellis if the ALJ accepts all limitations noted in Ellis's testimony and in the medical record. The ALJ did not find all of the reported limitations to be credible. The court concluded above that the ALJ's credibility finding was supported by substantial evidence and that he properly considered and weighed the medical evidence in determining that certain limitations noted by Ellis's physicians were inconsistent with their course of treatment and treatment notes. Ellis's step five argument merely

-21-

reasserts these previous arguments by claiming that the ALJ did not properly account for all of Ellis's applicable limitations. The ALJ did not err in his RFC assessment of Ellis's abilities and he properly relied upon the VE testimony in concluding that a significant number of jobs exist that a person with Ellis's particular limitations could perform. Therefore, the ALJ's step five determination is supported by substantial evidence.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner denying the plaintiff's application for disability insurance benefits and supplemental security income be and the same is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The clerk of court is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of February, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Case 2:08-cv-01021-JPS    Filed 02/23/10    Page 22 of 22    Document 21